383 S.E.2d 54

**STATE of West Virginia**

v.

**Franklin V. TESACK.**

**No. 18465.**

Supreme Court of Appeals of West Virginia.

July 3, 1989.

Mark E. Vieweg, Berardinelli & Vieweg, Barbara L. Baxter, Wheeling, for Franklin V. Tesack.

Richard M. Riffe, Asst. Atty. Gen., Charleston, for State.

**PER CURIAM:**

This is an appeal by Franklin V. Tesack from an order of the Circuit Court of Hancock County sentencing him to multiple terms in the State penitentiary for felony murder, burglary, attempted robbery, assault during the commission of a felony, and conspiracy. On appeal, he claims that the trial court violated double jeopardy principles by sentencing him for both felony murder and for the felonies underlying the felony-murder. He also claims that the court erred in failing to dismiss the indictment, in denying him an opportunity to enter a plea, in failing to require that the issue in the case be formulated as required by law, and in failing to provide him an opportunity to make a statement in his own behalf at the conclusion of the trial. Additionally, he claims that the verdict was not supported by the evidence and that he was denied effective assistance of counsel. After reviewing the record, the Court finds that the State has, in effect, confessed error on the double jeopardy assertion, and the Court reverses on that point. The Court also finds that the record is inadequately developed on the counsel issue and that the defendant's other assertions are without merit.

On September 26, 1985, two masked burglars wounded William Pearson and fatally shot his wife during a burglary of the

Pearson home. The Pearsons had managed to surprise the burglars, and managed to shoot both of them during the incident.

In spite of being shot, both burglars escaped from the house. However, one of them, George Ely, collapsed a short time later and was apprehended by two of the Pearsons' neighbors. The other burglar reached a getaway truck which pulled out of a nearby parking lot and headed west with its headlights turned off.

George Ely, the burglar who was apprehended, was taken to the Weirton Medical Center. Two days later he revealed that the other burglar was John Dino Martin and that a third man named Franklin, whose last name he did not know, was involved. Later, he identified a photograph of the defendant, Franklin V. Tesack, as being the photograph of the third participant named "Franklin."

Subsequently, the police arrested John Dino Martin and, as a result of a plea bargain, obtained his cooperation and testimony.

From George Ely and John Dino Martin the police learned that the defendant, Franklin Tesack, had served as a lookout and as the getaway driver. They also learned that Martin initially had difficulty in breaking into the Pearson house. He then radioed the defendant and informed him of the problem. The defendant then sent John Coleman, a fourth participant in the crime, to Martin and Ely with a screwdriver which they needed.

The defendant was indicted for conspiracy, burglary, two counts of attempted robbery, murder in the first degree, and assault during the commission of a felony. He was tried before jury during the September, 1986 term of the Circuit Court of Hancock County. At the conclusion of the trial, he was found guilty on all six counts. Later, on December 2, 1986, the Circuit Court of Hancock County sentenced him to from one to five years in the State penitentiary for conspiracy, to from one to fifteen years for burglary, to ten years on each of the attempted robbery counts, to life in the penitentiary without a recommendation of

mercy on the first degree murder count, and to from two to ten years in the penitentiary on the assault during the commission of a felony count.

■ On appeal, the defendant initially claims that the trial court violated the double jeopardy provisions of the Federal and State Constitutions by sentencing him for both felony murder and for the felonies underlying the felony murder. He argues that in *State v. Williams*, 172 W.Va. 295, 305 S.E.2d 251 (1983), this Court held that double jeopardy prohibits an accused charged with felony murder, as defined by *W.Va.Code*, 61–2–1, from being separately tried for or punished for both murder and the underlying felonies. An examination of the *Williams* case supports the defendant's claim. In syllabus point 8 the Court stated that:

> Double jeopardy prohibits an accused charged with felony-murder, as defined by W.Va.Code § 61–2–1 (1977 Replacement Vol.), from being separately tried or punished for both murder and the underlying enumerated felony.

■ In its brief and during oral argument, the State has, in effect, confessed error on this assignment of error. While confessions of error do not automatically entitle a party to a reversal, reversal is required when it can be ascertained that the errors confessed are supported by law. *State v. Young*, 166 W.Va. 309, 273 S.E.2d 592 (1980); *State v. Goff*, 159 W.Va. 348, 221 S.E.2d 891 (1976); *State v. Cokeley*, 159 W.Va. 664, 226 S.E.2d 40 (1976).

In the present appeal, the Court believes that it is clear that, given the *Williams* rule, the trial court did improperly sentence the defendant for both felony murder and the underlying enumerated felony or felonies. For that reason, the defendant's conviction must be reversed.

The defendant also makes a number of assignments of error relating to procedural actions and rulings by the trial court during his trial. For instance, he claims that the trial court erred in denying his motion to dismiss the indictment. At the preliminary hearing, co-defendant George Ely re-

fused to testify and invoked his Fifth Amendment right against self-incrimination. According to the defendant, the court thereupon, over objection of counsel for the defendant, permitted the State to introduce a taped statement given by George Ely. The defendant claims that this was hearsay evidence and that hearsay evidence may be received only if there is a substantial basis for believing that the source is credible. He argues that there was nothing to show that Ely's taped statement was reliable and that, because of the want of reliable evidence, he was improperly bound over to a grand jury.

There is no transcript of the preliminary hearing in the record presently before the Court. The order binding the defendant over to the grand jury, however, recites that:

> [T]he State adduced the testimony of Daniel L. McAtee, George Ely, and Ted Dragisich.

The order also indicates that an exhibit was admitted into evidence. This order suggests that the indictment was based on more than just George Ely's taped statement.

■ It has been recognized by this Court that the burden of showing reversible error is upon an appellant in a criminal case. *Crawford v. Coiner*, 152 W.Va. 411, 163 S.E.2d 793 (1968). With regard to this assignment of error, the Court cannot conclude that the defendant has met that burden.

The defendant next claims that he was not given an opportunity to enter a plea to the indictment and that no plea of not guilty on his behalf was ever entered by the court. He argues that the issue to be tried was thus never formulated as required by West Virginia law.

Although Rule 11(a) of the West Virginia Rules of Criminal Procedure indicates that a defendant may plead not guilty, guilty, or nolo contendere at the commencement of the trial, Rule 11 in section (h) further provides that "Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded."

In syllabus point 3 of *State v. Grimmer*, 162 W.Va. 588, 251 S.E.2d 780 (1979), this Court stated:

> Where the record fails to show that the defendant entered a plea but does show affirmatively that he was fully advised and fully aware of the nature of the charge against him; that he had effective counsel who made many motions and filed many pleadings on his behalf and afforded him a reasonably good defense; that a jury trial was afforded the defendant and in fact was held, thereby permitting him to confront his accusers; that he was not, by such failure, deprived of any constitutional or statutory protections designed to afford him a fair trial; and that circumstances reveal that he received a fair trial, any such failure to enter a plea, will be considered harmless error.

■ It appears that the defendant was fully advised of the nature of the charges against him. Many motions were filed in his behalf; a jury trial was conducted; the defendant was permitted to confront his accusers; at every stage of the proceeding he proceeded as if he were pleading not guilty; and lastly he confronted the evidence and the charges against him. Even if he was denied an opportunity to plead, given all the circumstances of the case, any error must be considered harmless under *State v. Grimmer, Id.*

The defendant next claims that, in violation of Rule 32 of the West Virginia Rules of Criminal Procedure, the circuit court failed to ask him whether he wished to make a statement in his own behalf at sentencing and failed to give him an opportunity to present information in mitigation of punishment.

The jury found the defendant of guilty of first degree murder and refused to recommend mercy. Under the provisions of *W.Va.Code*, 62-3-15, this conviction mandates that he be sent to the penitentiary for life with no eligibility for parole.

■ The function of the provision that a defendant shall be allowed to speak is to provide a convicted defendant with an op-

portunity to present information in mitigation of punishment. Since the defendant must be sentenced to life in the State penitentiary and will have no eligibility for parole under the mandatory provisions of *W.Va.Code*, 62–3–15, the trial court was without legal authority to mitigate the defendant's punishment. The court action, therefore, had no impact on the defendant's sentence and must be considered harmless.

The defendant also extensively argues that the State failed to adduce sufficient evidence to support the verdict and that the trial court improperly overruled his motion to set aside the verdict, motion for new trial, and motion of arrest in judgment.

■ In syllabus point 1 of *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978), this Court stated that:

In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

■ During the defendant's trial, John Dino Martin, one of the coconspirators in the crime charged, testified that the defendant was active in the planning and execution of the burglary of the Pearson house. He was the designated lookout and getaway driver. He sent the screwdriver to Martin when Martin was having difficulty in getting into the house. Martin's testimony was corroborated by that of James Coleman.

The State also introduced evidence showing that the defendant lived near the parking garage where the getaway truck was ultimately discovered.

The State's evidence was sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt, espe-cially when it is viewed in the light most favorable to the prosecution. The Court cannot conclude that it was either manifestly inadequate or that it resulted in consequent injustice.

Lastly, the defendant claims that he was denied effective assistance of counsel and that the failure of his counsel resulted in substantial prejudice. With relation to this allegation, the defendant points to a number of specific failures on the part of his attorney. He states that his counsel did not note the obvious presence of a State's witness in the courtroom and that counsel made no motion to sequester witnesses. He indicates that one potential juror, Mrs. Cordray, had pretrial conversations with her husband, who worked for the victim, and that his counsel failed to provide effective assistance when he did not move to disqualify Mrs. Cordray for cause. He also states that his counsel refused to ask questions of witness Coleman that the defendant considered crucial, that defense counsel did not offer an instruction on renunciation, that counsel offered no instruction on the elements of the offenses charged, and that he made no motion for a change of venue because of pretrial publicity in the case. Lastly, he claims that his counsel failed to obtain a proper psychological evaluation of the defendant.

The defendant also argues that the trial court erred by denying his motion for appointment of new counsel. At a hearing conducted on September 15, 1986, the defendant orally expressed concern and reservation to the court about his legal representation by his attorneys, Mr. Camilletti and Mr. Sacco. He filed a *pro se* motion for appointment of new counsel dated September 16, 1986, in which he charged that Mr. Camilletti had been appointed a special prosecuting attorney for Marshall County and that, under the circumstances, a new attorney should be appointed.

By letter dated October 13, 1986, the court denied the defendant's motion on the ground that there had been no proof of breakdown of communication and trust between the defendant and his legal representatives.

The defendant argues that Mr. Camilletti's appointment as special assistant prosecuting attorney for Marshall County or special assistant attorney, on its face, established a conflict of interest which required further inquiry and hearing by the circuit court. He argues that in failing to make such further inquiry and in refusing to appoint a new attorney, the trial court erred.

In *State v. England,* 180 W.Va. 342, 376 S.E.2d 548 (1988), the Court noted that on most occasions claims of ineffective assistance of counsel are primarily bottomed on facts which cannot be adequately determined from appeal records. The Court also indicated that these claims are most satisfactorily resolved through habeas corpus proceedings. The Court concluded in syllabus point 11 of *State v. England* that:

> Where the record on appeal is inadequate to resolve the merits of a claim of ineffective assistance of counsel, we will decline to reach the claim so as to permit the defendant to develop an adequate record in habeas corpus.

In the present case, the defendant's allegations regarding assistance of counsel are closely related to his claim that there had been a breakdown in communication and trust between himself and his counsel, especially since his counsel had been appointed a special prosecuting attorney for Marshall County prior to the trial in his case. The claim is also affected by his implication that his counsel, as a special prosecuting attorney, was biased and improperly represented his interest. The Court believes that the present record is insufficient for the Court to reach a fair determination of the merits of the defendant's claim. As in *State v. England, Id.,* the Court believes that the defendant's counsel claims should more appropriately be addressed in habeas corpus where a factual record can be developed.

Because the Court has concluded that the trial court erred in sentencing the defendant for both felony murder and the underlying felony or felonies, the judgment of the Circuit Court of Hancock County, inso-far as it relates to the sentence or sentences for the underlying felony or felonies, should be set aside. It is not absolutely clear to this Court which of the felonies served as a basis of the defendant's felony-murder conviction. The case, therefore, is remanded to the circuit court for a determination of this point with directions that the circuit court vacate the defendant's sentence or sentences on the underlying conviction or convictions. The portion of the circuit court's order sentencing the defendant to life in the penitentiary without a recommendation of mercy for first degree murder and for the remaining felonies is affirmed. The Court is of the view that the defendant should, if he so chooses, be afforded an opportunity to present his counsel claims in habeas corpus.

Reversed in part; affirmed in part; remanded with directions.