**Franklin V. TESACK, Petitioner,**

v.

**George TRENT, Warden, Mount Olive Correctional Complex, Respondent.**

**Civil Action No. 2:97–1132.**

United States District Court, S.D. West Virginia, Charleston Division.

Aug. 11, 1998.

---

**2.** It appears the state habeas petition was filed in 1993. *See* Respondent's Obj. at 4 n. 4.

Franklin V. Tesack, Mount Olive, WV, pro se.

Darrell V. McGraw, Jr., Attorney General of W.Va., Dawn E. Warfield, Assistant Attorney General, Charleston, WV, for respondent.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are Petitioner Tesack's objections to the Report–Recommendation filed by the Honorable Jerry D. Hogg, United States Magistrate Judge, as well as Tesack's "Consolidated Traverse and Motion for Summary Judgment in response to Respondent's Answer, Motion to Dismiss and Motion for Summary Judgment, and Memorandum in support thereof," treated as a motion for summary judgment. This action was referred to Judge Hogg, who has submitted his proposed findings of fact and recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge filed his Report–Recommendation on July 2, 1998, and Tesack filed his objections to the Report–Recommendation on July 16, 1998. Having reviewed *de novo* those portions of the Magistrate Judge's Report–Recommendation to which Tesack objects, the Court concludes that the objections are without merit. Consequently, the Court adopts and incorporates the Report–Recommendation with the following modifications.

█ Tesack objects that he was not advised of his right to file a response to the dispositive motions or of the danger of not responding, citing *Davis v. Zahradnick*, 600 F.2d 458 (4th Cir.1979), and *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975). These cases state that a pro se plaintiff, litigating a 42 U.S.C. § 1983 claim, must be advised of his right and responsibility to respond to a dispositive motion. The requirement has not been applied in habeas corpus suits filed under 28 U.S.C. § 2254.

Although the Court believes there is no *Roseboro* requirement in habeas actions, there is scant support for a similar proposition. In *Allison v. Blackledge*, 533 F.2d 894 (4th Cir.1976), *aff'd*, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977), a habeas action, the Fourth Circuit stated:

If the state moves for summary judgment . . . and offers affidavits and other proof that the petitioner's claim is lacking in merit, a pro se petitioner may be required, *after being advised of his rights and how to proceed*, to offer counter affidavits or

other proof to establish that material facts are genuinely disputed before he is afforded an evidentiary hearing. If, in such a situation, the petitioner fails to respond and offers no reasonable explanation why he cannot respond, summary judgment may properly be entered against him.·

*Id.* at 897 (emphasis added).[1] In an abundance of caution, the Court considers *de novo* Tesack's responsive motion for summary judgment.

In so doing, the Court is mindful of the applicable standard of review.

> As a prerequisite to obtaining habeas relief under amended Section 2254(d)(1), a petitioner must demonstrate that the state court's adverse adjudication of the merits of his federal claim was "contrary to" or an "unreasonable application of" clearly established law as determined by the Supreme Court.
>
> ...
>
> ... If a state court decision is in square conflict with a precedent (Supreme Court) which is controlling as to law and fact, then the writ of habeas corpus should issue; if no such controlling decision exists, the writ should issue only if the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant Supreme Court precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts. In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable.

*Green v. French,* 143 F.3d 865, 869–70 (4th Cir.1998).

In light of the highly deferential standard of review, the Court finds Tesack's claims are without merit. Two of the claims warrant discussion.

First, Tesack claims he received ineffective assistance of counsel because his defense attorney at trial had a conflict of interest. To state a claim that requires reversal of a conviction, Petitioner must show that his counsel's performance was deficient and that the deficiency was so "serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Supreme Court defined prejudice by stating, "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

 Tesack argues his attorney, Paul Camilletti, had a conflict of interest because, while he was representing Tesack, Camilletti was also a Special Assistant Attorney General in Marshall County. The Supreme Court has stated, "In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). If the defendant can establish both the actual conflict and that such conflict adversely affected the attorney's performance, then prejudice is assumed and the defendant is entitled to a new trial. *Id.* at 346–50, 100 S.Ct. 1708.

Here, Tesack has adequately stated a possible conflict of interest; indeed, the trial court held a hearing on the subject in which

---

**1.** Notably, when the Supreme Court affirmed *Allison,* it did so without stating a *Roseboro*-type requirement:

> As in civil cases generally, there exists a procedure whose purpose is to test whether facially adequate allegations have sufficient basis in fact to warrant plenary presentation of evidence. That procedure is, of course, the motion for summary judgment. Upon remand the warden will be free to make such a motion,

> supporting it with whatever proof he wishes to attach. If he chooses to do so, Allison will then be required either to produce some contrary proof indicating that there is a genuine issue of fact to be resolved by the District Court or to explain his inability to provide such proof.

*Blackledge v. Allison,* 431 U.S. 63, 80–81, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).

it recognized the situation as a potential conflict of interest, clarified Camilletti's specific, limited role as a Special Assistant Attorney General investigating a prison riot, and verified that Camilletti's co-counsel, Gary Sacco, was not also operating in such a role. *See* Ex. O, Resp't Mot. By Memorandum Opinion and Order, the Circuit Court made specific findings of fact and ruled there was no conflict of interest and Tesack would not be prejudiced by Camilletti's appointment.

It is unlikely Camilletti operated under an actual conflict. As the Magistrate noted, Camilletti's role as a Special Assistant Attorney General in Marshall County was restricted only to working on cases dealing with a local prison riot in a different facility from the one in which Tesack was incarcerated. Also, Camilletti assumed that role shortly before the trial began and had not completed any substantial tasks during his representation of Tesack. *See* Ex. D at 15, Resp't Mot. Moreover, even if this were an actual conflict, Tesack has not demonstrated that such conflict "adversely affected the attorney's performance." Consequently, this claim [2] of ineffective assistance of counsel fails because the state court adjudication was neither "contrary to" nor an "unreasonable application of" Supreme Court precedent.

Second, Tesack alleges he was denied a fair trial because the prosecutor engaged in unethical and unlawful acts by not fully disclosing the terms of witnesses' plea agreements and by withholding exculpatory evidence. The Supreme Court has held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). "Evidence is 'material' under *Brady,* and the failure to disclose it justifies setting aside a conviction, only where there exists a 'reasonable probability' that had the evidence been disclosed the result at trial would have been different." *Wood v. Bartholomew,* 516 U.S. 1, 5, 116 S.Ct. 7, 133 L.Ed.2d 1 (1995) (citing *Kyles v. Whitley,* 514 U.S. 419, 433, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (opinion of Blackmun, J.); *id.* at 685, 105 S.Ct. 3375 (White, J., concurring in part and concurring in judgment)). A "reasonable probability" of a different result is shown when the government's failure to disclose evidence "undermines confidence in the outcome of the trial." *Kyles,* 514 U.S. at 434, 115 S.Ct. 1555 (citing *Bagley,* 473 U.S. at 668, 105 S.Ct. 3375). "[T]he *Brady* rule does not apply if the evidence in question is available to the defendant from other sources." *United States v. Wilson,* 901 F.2d 378, 380 (4th Cir.1990) (quoting *United States v. Davis,* 787 F.2d 1501, 1505 (11th Cir.), *cert. denied,* 479 U.S. 852, 107 S.Ct. 184, 93 L.Ed.2d 118 (1986)).

■ Neither ground alleged by Tesack is sufficient under the standard of review. First, Tesack alleges the prosecutors failed to disclose all the terms of the witnesses' plea agreements. Although copies of the plea agreements were disclosed to the defense, Tesack argues the plea agreements granted the witnesses immunity for more crimes than were stated on the face of the agreements. Tesack argues:

> A cursory review of those plea agreements, demonstrate the majority of paragraphs contained therein, make reference to specific criminal offenses but ¶ 11 indicates the terms of the agreements involved other criminal offenses that the witnesses apparently received immunity on, but were not specifically disclosed therein or ever provided to Petitioner.

Tesack's Consolidated Traverse at 29. By his own words, Tesack reveals that the plea agreements signaled that they did not state the entirety of the deal struck. Tesack does not dispute that the witnesses were extensively cross-examined regarding their plea agreements. Again, "the *Brady* rule does

---

**2.** Tesack alleged two other types of ineffective assistance of counsel: his trial counsel was ineffective in at least 16 purported ways and his appellate counsel was ineffective. The Court does not address these claims specifically but adopts and incorporates the Report–Recommendation.

not apply if the evidence in question is available to the defendant from other sources." *Wilson*, 901 F.2d at 380. Second, Tesack alleges the prosecution withheld witnesses' statements because the prosecutor felt they were not exculpatory. Tesack offers nothing to demonstrate such evidence was either material or exculpatory. *See also Brown v. French*, 147 F.3d 307, 311–12, 1998 WL 306568 (4th Cir.1998) (stating a writ may not issue merely to punish a prosecutor's unethical behavior but only when material, exculpatory evidence is withheld). Because the state court adjudication was neither "contrary to" nor an "unreasonable application of" Supreme Court precedent, the writ will not issue.

Accordingly, the Court adopts and incorporates the findings and recommendation of the Magistrate Judge with the foregoing modifications and **ORDERS** (1) Respondent's motion for summary judgment is **GRANTED;** (2) Respondent's motion to dismiss is **DENIED** as moot; (3) Petitioner's motion for summary judgment is **DENIED;** and (4) that this action is dismissed from the docket of the Court.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record and to Petitioner.

### REPORT–RECOMMENDATION

HOGG, United States Magistrate Judge.

On November 20, 1997, the petitioner, an inmate at Mount Olive Correctional Complex, filed, *pro se,* a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 and paid the filing fee.

The petition was referred to the undersigned United States magistrate judge to make proposed findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and the LOCAL RULES OF MAGISTRATE JUDGE PROCEDURE.

On June 8, 1998, the Warden filed a consolidated answer, motion to dismiss and motion for summary judgment and memorandum in support thereof. Petitioner did not reply. This matter is now in a posture for review.

The facts of the underlying conviction are as follows. On September 26, 1985, two masked burglars wounded William Pearson and fatally shot his wife during a burglary of the Pearson home. The Pearsons had managed to surprise the burglars and managed to shoot both of them during the incident.

In spite of being shot, both burglars escaped from the house. However, one of them, George Ely, collapsed a short time later and was apprehended by two of the Pearsons' neighbors. The other burglar reached a getaway truck which pulled out of a nearby parking lot and headed west with its headlights turned off.

George Ely, the burglar who was apprehended, was taken to the Weirton Medical Center. Two days later he revealed that the other burglar was John Dino Martin and that a third man named Franklin, whose last name he did not know, was involved. Later, he identified a photograph of the petitioner, Franklin V. Tesack, as being the photograph of the third participant named "Franklin."

Subsequently, the police arrested John Dino Martin and, as a result of a plea bargain, obtained his cooperation and testimony.

From George Ely and John Dino Martin, the police learned that the petitioner, Franklin Tesack, had served as a lookout and as the getaway driver. They also learned that Martin initially had difficulty breaking into the Pearson house. He then radioed the petitioner and informed him of the problem. The petitioner sent John Coleman, a fourth participant in the crime, to Martin and Ely with a screwdriver which they needed.

The petitioner was indicted for conspiracy, burglary, two counts of attempted robbery, murder in the first degree, and assault during the commission of a felony. He was tried before a jury during the September, 1986 term of the Circuit Court of Hancock County.

On October 31, 1986, petitioner was convicted in the Circuit Court of Hancock County of the crimes of felony murder, conspiracy, burglary, assault during the commission of a felony, and two counts of attempted robbery. He was sentenced to life in the penitentiary without a recommendation of mercy on the

murder charge and received consecutive sentences of one to five years, one to fifteen years, two to ten years, and two terms of ten years in the penitentiary on the other counts. *State v. Tesack,* 181 W.Va. 422, 383 S.E.2d 54, 57 (W.Va.1989).

Petitioner filed a direct appeal of his convictions that contained eight assignments of error. The West Virginia Supreme Court of Appeals, by *per curiam* dated July 3, 1989, set aside petitioner's sentence on the underlying felony or felonies on the grounds of double jeopardy and affirmed his convictions and sentences for first degree murder and for the remaining felonies. The Supreme Court found the record to be inadequately developed on the counsel issue and indicated that petitioner should be afforded the opportunity to present his counsel issue claims in habeas corpus. *Tesack,* 383 S.E.2d at 60. His remaining assignments of error were rejected by the court after full consideration on the merits.

Following the remand, the circuit court vacated petitioner's sentences for burglary and one of the attempted robbery convictions. Petitioner did not seek further direct review of his convictions.

Subsequently, petitioner filed a series of unsuccessful *pro se* motions seeking a new trial in state circuit court. Appointed counsel filed an amended petition for post-conviction habeas corpus relief in the Circuit Court of Hancock County, West Virginia. On August 28, 1996, after numerous hearings and continuances, the circuit court issued its final order denying habeas relief.

Petitioner, by counsel, filed an appeal of the circuit court's final order denying habeas relief. According to petitioner, the issues raised in this appeal were the same as the grounds asserted in the present petition for § 2254 relief. The West Virginia Supreme Court of Appeals refused to accept the petition for appeal by order entered September 9, 1997. On November 20, 1997, petitioner filed the instant petition for a writ of habeas corpus by a person in state custody pursuant to 28 U.S.C. § 2254 now before the court.

The petitioner asserts eleven claims which are briefly summarized as follows:

A. the State's evidence was insufficient to support the jury's verdict;

B. petitioner's trial counsel was ineffective due to the Court's failure to inquire into counsel's alleged conflict of interest;

C. petitioner was denied his constitutional assistance of counsel;

D. the prosecution engaged in unethical and unlawful acts and/or omissions;

E. petitioner was not properly arraigned;

F. petitioner was denied due process when he was denied the right to confront his accusers at the preliminary hearing and when the Court denied his *pro se* petition wherein he challenged his preliminary hearing;

G. the grand jury lacked jurisdiction to indict the petitioner;

H. petitioner's indictment was secured in violation of his constitutional rights and he was prejudiced by having to file and argue a *pro se* motion to dismiss the indictment;

I. petitioner was not informed of his right to testify or not to testify;

J. petitioner's sentences violate the Eighth Amendment; and

K. petitioner was denied effective assistance of appellate counsel.

Based on a careful review of the record, it is the finding of the undersigned magistrate judge that the petitioner's claims are without merit and that respondent's motion for summary judgment should be granted.

In a recent decision, the Fourth Circuit delineated the standard of review applicable to claims raised under § 2254. *See Green v. French,* 143 F.3d 865, 1998 WL 237506 (4th Cir.1998). The Court outlined three limitations on the availability of federal habeas relief as contained in 28 U.S.C. § 2254. The Court found that § 2254(d)(1) allows for habeas relief only if a petitioner is able to show that "the state court's adjudication was (1) contrary to or an unreasonable application of (2) clearly established federal law (3) as determined by the Supreme Court of the United States." *See id.* at 868. This clearly establishes a very deferential standard of re-

view and severely limits when a petitioner is entitled to habeas relief. Habeas relief shall be granted only "if a state court decision is so clearly incorrect that it would not be debatable among reasonable jurists." *See Green,* 143 F.3d 865, 870, 1998 WL 237506.

■ Furthermore, in order to obtain habeas relief, a petitioner must show that the state court decision "conflicted with *clearly* established federal law *as determined by the Supreme Court.*" *See* 28 U.S.C. § 2254(d)(1)(emphasis added). The petitioner must establish that he is entitled to habeas relief based on the law that existed at the time his conviction became final. Reliance on decisions other than those of the Supreme Court can prove fatal to a petitioner's claims.

■ In summary, there is a heavy burden placed on a petitioner seeking federal habeas relief. According to the Fourth Circuit's recent holding in *French,* a writ of habeas corpus should not issue unless the state court's decision "rests upon an objectively unreasonable application of established principles to new facts," (*See French* at 870) or the state court's decision is "contrary to" Supreme Court precedent, meaning that "a state court's decision of a question of pure law is in irreconcilable conflict with a controlling resolution of that same legal question by the supreme court." (*See French,* at 871 (citing *Lindh,* 96 F.3d at 871, 877)). If the petitioner is unable to show that a state court's decision on an issue of pure law is "contrary to" Supreme Court precedent, the writ may not issue. Similarly, if a petitioner fails to clearly show that a state court's decision was "an unreasonable application of" precedent by showing that the decision invokes the correct principle from the precedent, but unreasonably applies that principle to the facts, the petitioner will not be granted habeas relief.

■ As an initial matter, petitioner raises several claims which are not cognizable in a federal habeas corpus action and may forthwith be dismissed. First, there is no constitutionally recognized right to confront an accuser at the preliminary hearing and there was no error in denying petitioner's pro se petitions. The right to confrontation

is typically a trial right. *Delaware v. Fensterer,* 474 U.S. 15, 106 S.Ct. 292, 88 L.Ed.2d 15, (1985). The essence of the Confrontation Clause is to allow the defendant to face his accusers at trial. This right further permits defendant to cross-examine the witness and give the jury an opportunity to assess the credibility and observe the demeanor of the witness. A preliminary hearing, however, is limited to merely the determination of whether there is probable cause to hold the accused for trial and by its very nature is a far less searching process into the merits of the case. *Mancusi v. Stubbs,* 408 U.S. 204, 210, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972). The record in the instant action establishes that the petitioner was afforded the opportunity to conduct a full and complete cross-examination of all the state's witnesses. *Mancusi v. Stubbs,* supra.

In addition, petitioner contends that the grand jury lacked jurisdiction to return an indictment because he had filed a *pro se* habeas petition with the circuit court and such a filing should have prevented the case from going to the grand jury. Petitioner also alleges that the prosecution elicited false or perjurious testimony and defined "conspiracy" to the grand jury. However, petitioner fails to clarify what this "unequivocally false testimony" is or how it prejudiced his case. More significantly, such allegation fails to state a cognizable claim.

■ A claim is cognizable under 28 U.S.C. § 2254 if it alleges violations of the Federal Constitution, laws or treaties. *Rose v. Hodges,* 423 U.S. 19, 96 S.Ct. 175, 46 L.Ed.2d 162 (1975). Violations of state law and procedure that do not infringe specific federal constitutional protections are not cognizable in habeas. *Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Petitioner has failed to demonstrate that such allegation implicates federal law. Accordingly, the charges that the grand jury lacked jurisdiction to return an indictment because he had filed a *pro se* habeas petition with the circuit court, that such a filing should have prevented the case from going to the grand jury, and that he was not properly indicted are not cognizable under 28 U.S.C. § 2254 and must be dismissed.

■ With regard to his claims which are cognizable in federal habeas, all of the charges raised are without merit and should be dismissed. Specifically, petitioner contends that the evidence presented at trial was insufficient to sustain a verdict of guilty. However, petitioner has failed to carry his burden to show that he is entitled to habeas corpus relief. Under *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), " a state court conviction will withstand a due process attack on sufficiency of evidence grounds if the federal habeas corpus court determines, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' 443 U.S. at 318–319 (emphasis in original)." *Inge v. Procunier*, 758 F.2d 1010, 1013 (4th Cir. 1985); *cert. denied*, 474 U.S. 833, 106 S.Ct. 104, 88 L.Ed.2d 85 (1985). In the instant petition, petitioner challenges the sufficiency of the evidence to find him guilty of attempted robbery as described in count three of the indictment, murder in the first degree as contained in count five, and guilty of assault during the commitment of a felony as prescribed in count six. However, the trial record is replete with evidence of the petitioner's involvement in all three aspects of the crimes: in the planning, in the preparation, and, finally, in the commitment of the crimes. (See, e.g., Resp't Ex. J at 1398, 1409, 1417, 1414–19, 1573, 1616–18, 1626–27, 1629–32, 1637–44, 1657–58, 1665, 1684, 1687, 1694–95, 1700, 1702, 1706–07, 1724, 1746, 1748, 1751–57, 1759, 1764–67, 1771–72, 1781–84, and 1784, *inter alia*) Furthermore, in dismissing petitioner's evidentiary insufficiency claim, the Supreme Court of Appeals of West Virginia found that the State's "evidence was sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt, especially when viewed in the light most favorable to the prosecution." *Tesack*, 383 S.E.2d at 59. The state court's standard of review was, therefore, entirely consistent with federal law as determined by the United States Supreme Court in *Jackson v. Virginia*, supra. When the evidence is viewed in the light most favorable to the government, as mandated by the Supreme Court in *Jack-*

*son v. Virginia, supra*, the evidence overwhelmingly establishes the petitioner's involvement in all aspects of the crimes. Thus, respondent is entitled to summary judgment on this claim.

Petitioner makes several assertions regarding his defense counsel. First, he asserts that his defense counsel's role as Special Assistant Attorney General in Marshall County amounted to a conflict of interest that warrants granting him extraordinary relief. However, petitioner fails to address how he was specifically prejudiced by Mr. Camilletti's government assignment or how the limited role of his defense counsel rose to the level of an actual rather than a theoretical conflict of interest. It is evident that no actual conflict of interest existed.

■ Petitioner also asserts that he was deprived of constitutionally effective assistance of counsel at trial and on appeal. The standards established by the United States Supreme Court in determining whether or not a defendant was denied his Sixth Amendment right to effective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Ineffective assistance of counsel is a mixed question of fact and law. A petitioner must show (1) that counsel made errors so serious that counsel's representation fell below an objective standard of reasonableness, and (2) that such failure resulted in prejudice so as to render the results of the trial unreliable. *Id.* at 688, 104 S.Ct. 2052. A lawyer's performance is entitled to a presumption of reasonableness. *Id.* at 689, 104 S.Ct. 2052. Thus, a movant challenging his conviction on the grounds of ineffective assistance must overcome a strong presumption that the challenged action amounted to trial strategy. Petitioner has raised at least 16 purported grounds for his allegation of ineffective assistance of counsel, all of which are without merit. Moreover, petitioner has failed to apply applicable law to the errors and has failed to illustrate how the errors specifically prejudiced him. Contrary to petitioner's allegations that his trial counsel failed to "investigate the case both factual and legal" (Pet'r Mem. at 13) or that counsel failed to adequately perform at trial, petitioner was

provided with constitutionally effective assistance at trial. The record reflects that throughout trial, counsel presented a coherent and persuasive theory of defense that was simply defeated by the overwhelming evidence which established that Tesack played an integral part in the burglary and murder at the Pearson home. Defense counsel's performance clearly fell within the wide range of professionally competent assistance and any error in performance did not create a likelihood of an altered outcome or result in proceedings fundamentally unfair or unreliable.

■ Petitioner's assertion that he was deprived of his Sixth Amendment right to effective assistance of appellate counsel is also without merit. Although petitioner claims that his appellate counsel "failed to insure that the entire record upon which the appeal was based, was submitted to the West Virginia Supreme Court of Appeals," he has not identified those portions of the trial court record which were allegedly omitted. Moreover, the record shows that appellate counsel by notice dated December 1, 1987, designated the entire file of the Circuit Court of Hancock County, West Virginia in support of petitioner's appeal. Petitioner also failed to identify a single significant or obvious issue that, if raised on direct appeal, would have resulted in a reversal of his conviction. Thus, petitioner has failed to overcome the presumption that his appellate counsel acted competently in selecting the issues to raise on direct appeal.

Petitioner next alleges that the prosecution engaged in unethical and unlawful acts and/or omissions which resulted in an unfair trial. Under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), it is a violation of due process for the state to withhold material evidence favorable to the defendant that the defendant specifically requests. Undisclosed evidence "is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87

L.Ed.2d 481 (1985). "Furthermore, 'the *Brady* rule does not apply if the evidence in question is available to the defendant from other sources.'" *United States v. Wilson,* 901 F.2d 378, 380 (4th Cir.1990)(quoting *United States v. Davis,* 787 F.2d 1501, 1505 (11th Cir.) *cert. denied, sub nom Lowe v. United States,* 479 U.S. 852, 107 S.Ct. 184, 93 L.Ed.2d 118 (1986)).

Petitioner alleges that the prosecution failed to disclose the full terms of the plea agreement with the co-conspirators. However, the full terms of the plea agreements were disclosed and known to the defense prior to trial. Additionally, the jury was made aware of the plea agreements at trial. The witnesses receiving plea agreements were extensively cross-examined by the defense and the plea agreements were entered into evidence. There is clearly no merit to petitioner's assertion that the prosecution engaged in any unethical conduct.

Petitioner's claim that he was not properly arraigned is equally frivolous. The West Virginia Supreme Court of Appeals considered such issue and, relying on Syllabus point 3 of *State v. Grimmer,* 162 W.Va. 588, 251 S.E.2d 780 (W.Va.1979), concluded that:

> It appears that the defendant was fully advised of the nature of the charges against him. Many motions were filed in his behalf; a jury trial was conducted; the defendant was permitted to confront his accusers; at every stage of the proceeding he proceeded as if he were pleading not guilty; and lastly he confronted the evidence and the charges against him. Even if he was denied an opportunity to plead, given all the circumstances of the case, any error must be considered harmless under *State v. Grimmer,* [251 S.E.2d 780 (1980) ].

*Tesack,* 383 S.E.2d at 58. Again, there is simply no evidence that petitioner is entitled to any relief. Petitioner has failed to show that any of his constitutional rights were violated and has not directed the court to a single Supreme Court case dispositive of his claim. Thus, such claim must also be dismissed as being without merit.

■ Petitioner next alleges that he is entitled to relief because the trial court failed

to instruct him of his right to testify. The state court noted that the petitioner and, through his counsel, asserted an alibi defense which he attempted to convert into a renunciation defense in the course of trial. The undersigned magistrate judge concurs with the Court finding that a jury would not have accepted such alternative theories and the petitioner's testimony would not have been credible. (Resp't. Ex. D at 13)

Finally, petitioner alleges that his sentences are void and violative of the Eighth Amendment of the United States Constitution guarding against cruel and unusual punishments. Petitioner relies on the West Virginia Supreme Court of Appeals' finding that confinement in the West Virginia Penitentiary in Moundsville, West Virginia, amounted to cruel and unusual punishment. *Crain v. Bordenkircher,* 176 W.Va. 338, 342 S.E.2d 422 (W.Va.1986). However, inasmuch as petitioner has been moved to Mount Olive Correctional Complex and no cruel or unusual punishment claims against his new housing have been brought, such claim is moot.

For the reasons stated above, it is

**RECOMMENDED** that the respondent's motion for summary judgment be granted; that petitioner's petition for habeas corpus pursuant to 28 U.S.C. § 2254 be denied, and that this case be dismissed and stricken from the docket of the court.

Petitioner and respondent are hereby notified that a copy of this **REPORT–RECOMMENDATION** will be submitted to the Honorable Charles H. Haden II, Chief Judge, and that, in accordance with the provisions of Rule 72(b), Federal Rules of Civil Procedure, the parties may, within 13 days of the date of filing of this **REPORT–RECOMMENDATION** serve and file written objections with the Clerk of the court, identifying the portions of the **REPORT–RECOMMENDATION** to which objection is made and the basis for such objections. The Judge will make a *de novo* determination of those portions of the **REPORT–RECOMMENDATION** to which objection is made in accordance with the provisions of 28 U.S.C. § 636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judg-

ment of the district court based on such **REPORT–RECOMMENDATION.** Copies of objections shall be served on all parties with copies of the same to Chief Judge Haden and this magistrate judge.

The Clerk is directed to file this **RE-PORT–RECOMMENDATION** and mail a copy of the same to the petitioner and counsel of record for the respondent.

July 2, 1998.