**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Petitioner Below, Respondent**

**v.) No. 23-106** (Cabell County 18-F-286)

**Argie L. Jeffers Sr.,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Argie L. Jeffers Sr. appeals his convictions and sentences as set forth in the Circuit Court of Cabell County's sentencing order entered on January 24, 2023.[1] The petitioner argues that the circuit court erred when it denied several of his pretrial motions and erred by not allowing a presentence report to be entered prior to sentencing. Upon our review, finding no substantial question of law and no prejudicial error, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21(c).

Sometime around September 2017, Carrie Jo Sowards was murdered and her body was dismembered and placed into five-gallon buckets, which were ultimately recovered from the Guyandotte River and a dumpster behind a local business. Law enforcement officers identified the petitioner, Ms. Sowards' boyfriend, as the suspected perpetrator and, in August 2018, the Cabell County Grand Jury returned a two-count indictment against the petitioner charging him with first-degree murder and concealment of a deceased human body.

Prior to trial, the petitioner filed a motion to exclude evidence of alleged instances of domestic violence between the petitioner and the victim. The State filed a written response, arguing that pursuant to *State v. Dennis*, 216 W. Va. 331, 607 S.E.2d 437 (2004), prior acts of domestic violence may be admitted as res gestae evidence. On the morning of trial, the circuit court considered the petitioner's motion to exclude evidence of domestic violence and, ultimately, denied the motion. During trial, the State presented two 9-1-1 calls to support the theory that the petitioner and the victim had a history of domestic violence. The first call occurred on August 24, 2017, when the victim's child called 9-1-1 to report that the child's father had informed the child that the petitioner and the victim were fighting within the petitioner's home. Officers were dispatched to the scene, but a police report was never filed. The second call occurred on September

---

[1] The petitioner is represented by counsel Raymond A. Nolan. The State of West Virginia is represented by Attorney General John B. McCuskey and Deputy Attorney General Andrea Nease Proper. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel.

24, 2017, when an individual reported gunshots in the general vicinity of the petitioner's home. The location of the gunshots was never discovered. The State also presented witness testimony from Nicholas McQuaid that he overheard a heated argument between the petitioner and the victim sometime prior to the murder.

The petitioner's grandson and his friend testified to the events that led to the discovery of the remains in the dumpster. The grandson testified that months after the murder, the petitioner asked the grandson to drive him to a location to retrieve buckets before going to a nearby car wash to dispose of them. According to the grandson, the petitioner claimed that the buckets contained drugs belonging to the victim, and the petitioner intended to get rid of the drugs by placing them in a nearby dumpster. The grandson later called his friend to discuss this encounter and stated that something felt wrong. The grandson and friend agreed to later return to the dumpster together and investigate the buckets, planning to sell the drugs inside. When they discovered human remains, they each called 9-1-1 to report what they found. During the calls, both persons made statements alleging that the petitioner had murdered the victim. The petitioner moved to redact these conclusory statements, but the circuit court admitted them as res gestae evidence. The State also presented testimony from various law enforcement officers regarding their investigation into the petitioner as a suspect and how blood spatter evidence and five-gallon buckets similar to those containing Ms. Sowards remains were found within the petitioner's home. The petitioner testified in his own defense and denied harming, much less murdering, Ms. Sowards.

Prior to deliberations, the petitioner requested that the court provide the jury with a proposed instruction for voluntary manslaughter. The court denied the request, noting that an instruction on voluntary manslaughter would not be appropriate given that there was "no evidence on that" and because voluntary manslaughter was "not a defense in this case." Following deliberations, the jury found the petitioner guilty of both first-degree murder and concealment of a deceased human body. The jury did not recommend mercy. After denying the petitioner's request for a presentence investigation, the court sentenced the petitioner to one to five years for the concealment of a deceased human body, to run consecutively to a life sentence without mercy for first-degree murder. The petitioner now appeals his conviction.

On appeal, the petitioner presents various issues for this Court's consideration, which have specific review standards.[2] Accordingly, instead of setting forth a general standard of review, we will discuss the specific standards applicable to each section as we address them. We first address the court's evidentiary rulings and note that this Court has recognized that that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998).

The petitioner first assigns as error the circuit court's decision to allow evidence regarding alleged instances of domestic violence between the petitioner and the victim to be admitted at trial. Specifically, the petitioner takes issue with testimony elicited regarding the 9-1-1 calls placed in the days or weeks leading up to the murder, which he claims the State used to create the inference

---

[2] In his reply brief, the petitioner withdrew an assignment of error pertaining to the court's denial of his motion for a jury view. Accordingly, we do not address that issue.

of a domestic violence incident between the petitioner and Ms. Sowards. The petitioner contests the State's description of the incidents of domestic violence as intrinsic evidence that could be admitted under *Dennis*, and, rather, argues that the calls were evidence of "other bad acts" admitted in violation of 404(b) of the West Virginia Rules of Evidence.

Upon our review, we conclude that we need not address whether the circuit court erred in failing to undertake an analysis of this evidence pursuant to Rule 404(b) because the petitioner failed to raise this objection below. Specifically, the petitioner did not object to the contested evidence under Rule 404(b) at trial, but, rather, under Rule 403 as being unfairly prejudicial. We have previously held that when a party objects to the admissibility of evidence on a specific ground, "the objection is then limited to that precise ground and error cannot be predicated upon the overruling of the objection, and the admission of the testimony on some other ground, since specifying a certain ground of objection is considered a waiver of other grounds not specified." *State v. DeGraw*, 196 W. Va. 261, 272, 470 S.E.2d 215, 226 (1996) (citation omitted). Consequently, because the petitioner failed to raise a Rule 404(b) objection before the trial court below, he is precluded from making this argument for the first time on appeal.

Next, the petitioner argues that the circuit court erred in refusing to redact portions of the statements made by the petitioner's grandson and his friend during their 9-1-1 calls. The petitioner concedes that the 9-1-1 calls as a whole were relevant under Rule 401 of the West Virginia Rules of Evidence, but claims that the specific statements identifying the petitioner as Ms. Sowards' killer were unduly prejudicial under Rule 403 and should have been redacted from the calls. The petitioner also contends that the testimony from his grandson and the friend, stating that they intended to retrieve the buckets in order to sell the drugs they believed to be inside, somehow demonstrates that their assertions identifying the petitioner as the perpetrator of Ms. Sowards' murder were speculative. We find this argument to be without merit.

This Court has previously held that

> "Rules 402 and 403 of the *West Virginia Rules of Evidence* [1985] direct the trial judge to admit relevant evidence, but to exclude evidence whose probative value is substantially outweighed by the danger of unfair prejudice to the defendant." Syllabus point 4, *Gable v. Kroger*, 186 W. Va. 62, 66, 410 S.E.2d 701, 705 (1991).

Syl. Pt. 1, *State v. Dorisio*, 189 W. Va. 788, 434 S.E.2d 707 (1993).

Here, the 9-1-1 calls made by the petitioner's grandson and his friend were introduced in order to establish that the petitioner had possession of the buckets containing Ms. Sowards' remains and that he attempted to dispose of the remains by placing the buckets into a dumpster. Without question, these calls were not favorable to the petitioner. However, we cannot find that that the probative value of the 9-1-1 calls identifying the petitioner as the perpetrator of the crimes was outweighed by its prejudice. To the extent the petitioner argues that the statements made by his grandson and the friend during the 9-1-1 call were not credible due to their testimony that they went to retrieve the buckets in order to sell drugs, we note that the jury was provided with this information, and it was within the jury's purview to assess credibility. *See Michael D.C. v. Wanda*

3

*L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Accordingly, we find no abuse of discretion in the circuit court's denial of the petitioner's motion to redact statements from the 9-1-1 calls.

The petitioner next asserts that the circuit court erred in failing to instruct the jury on an instruction of voluntary manslaughter. The petitioner claims that there was sufficient evidence for a reasonable jury to conclude that if the petitioner was the perpetrator, he could have committed such acts in the heat of passion.

We review the circuit court's refusal to give a requested jury instruction under an abuse of discretion standard. *See* Syl. Pt. 1, *State v. Hinkle*, 200 W. Va. 280, 489 S.E.2d 257 (1996). This Court has generally held as follows:

> "The question of whether a defendant is entitled to an instruction on a lesser included offense involves a two-part inquiry. The first inquiry is a legal one having to do with whether the lesser offense is by virtue of its legal elements or definition included in the greater offense. The second inquiry is a factual one which involves a determination by the trial court of whether there is evidence which would tend to prove such lesser included offense. *State v. Neider*, 170 W. Va. 662, 295 S.E.2d 902 (1982)." Syl. Pt. 1, *State v. Jones*, 174 W. Va. 700, 329 S.E.2d 65 (1985).

Syl. Pt. 3, *State v. Wilkerson*, 230 W. Va. 366, 738 S.E.2d 32 (2013). Moreover, "[j]ury instructions on possible guilty verdicts must only include those crimes for which substantial evidence has been presented upon which a jury might justifiably find the defendant guilty beyond a reasonable doubt." Syl. Pt. 5, *State v. Demastus*, 165 W. Va. 572, 270 S.E.2d 649 (1980).

As to the first inquiry, it is without question that voluntary manslaughter is a lesser included offense of first-degree murder. *See State v. Spinks*, 239 W. Va. 588, 609, 803 S.E.2d 558, 579 (2017) (citing W. Va. Code §§ 61-2-1 to -5). With respect to the second inquiry, we conclude that there was little, if any, evidence offered at trial to support a voluntary manslaughter instruction. Indeed, the petitioner testified on his own behalf and denied harming, let alone murdering, Ms. Sowards and, therefore, failed to present any evidence that he killed her without premeditation. Accordingly, we find that the circuit court did not abuse its discretion in refusing to instruct the jury on the lesser included offense of voluntary manslaughter.

Lastly, the petitioner asserts that he was entitled to a mandatory presentencing report under Rule 32(b)(1)(A) of the West Virginia Rules of Criminal Procedure. At trial, the petitioner did not waive this report, and he claims that he was entitled to receiving one prior to sentencing.

Rule 32(b)(1) provides that the probation officer shall prepare a presentence investigation and submit a report to the court before the sentence is imposed, unless:

(A) the defendant waives a investigation and report;
(B) the court finds that the information in the record enables it to meaningfully exercise its sentencing authority; and

(C) the court explains on the record its finding that the information in the record enables it to meaningfully exercise its sentencing authority.

W. Va. R. Crim. P. 32(b)(1)(A) - (C).

We determine that even if the lack of a presentencing report was error, it was harmless. The presentence investigation in the petitioner's case would have served no legitimate purpose, as the circuit court was required to impose a life sentence without the possibility of parole for the petitioner's conviction of first-degree murder. As we have previously held, "[t]he recommendation of mercy in a first[-]degree murder case lies solely in the discretion of the jury. Therefore, it would be improper for the trial court to set aside a jury verdict of first[-]degree murder without a recommendation of mercy in order to give a recommendation of mercy." Syl. Pt. 7, *State v. Triplett*, 187 W. Va. 760, 421 S.E.2d 511 (1992). Because the jury returned a verdict of life without mercy for the murder conviction, the circuit court was "without legal authority to mitigate the defendant's punishment." *State v. Tesack*, 181 W. Va. 422, 427, 383 S.E.2d 54, 59 (1989). Accordingly, because the circuit court had no discretion in imposing a sentence of life without mercy, the lack of a presentence investigation report did not harm or prejudice the petitioner.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** August 4, 2025

**CONCURRED IN BY:**

Chief Justice William R. Wooton
Justice Tim Armstead
Justice Charles S. Trump IV

**DISSENTING:**

Justice C. Haley Bunn

BUNN, Justice, dissenting:

I dissent to the majority's resolution of this matter because I would have set this case for oral argument on the Rule 19 docket to thoroughly address certain of the errors alleged in this appeal. With respect to petitioner's assignment of error regarding the circuit court's refusal of a presentence report, this Court very recently held that "West Virginia Rule of Criminal Procedure 32(b)(1) requires that the sentencing court receive and consider a presentence report before sentencing unless all conditions in (A), (B), and (C) are met." Syl. Pt. 4, *State v. McDonald*, 250 W. Va. 532, 906 S.E.2d 185 (2023). The recency and conclusiveness of this syllabus point require

5

a more thorough examination of the implications of the circuit court's refusal of this mandatory step of the sentencing process.

In addition, a closer examination of petitioner's assignment of error regarding Rule 404(b) is needed. The majority concludes that petitioner failed to preserve a Rule 404(b) objection below because his counsel referenced only the "prejudicial" nature of the evidence. However, the appendix record demonstrates that the State argued, and the trial court ruled, that the evidence was *res gestae* rather than Rule 404(b) evidence, demonstrating both their recognition of the nature of petitioner's objection and its adequacy to permit our review.

Because these issues warrant oral argument and more thorough consideration in a signed opinion, I respectfully dissent.