STATE OF WEST VIRGINIA

*v.*

CLAYTON THOMAS GRIMMER

(No. 13928)

Decided February 6, 1979.

*Pinsky, Barnes, Watson, Cuomo & Hinerman, William E. Watson and Paula K. Silver* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *Richard L. Gottlieb,* Assistant Attorney General, for defendant in error.

CAPLAN, CHIEF JUSTICE:

The defendant, Clayton Thomas Grimmer, brings this case here on writ of error to a final judgment of the Circuit Court of Brooke County. He was convicted by a jury of being an accessory before the fact to murder with a recommendation of mercy. The court thereupon sentenced him to life imprisonment with a recommendation of mercy. We affirm the judgment of the trial court.

Clayton Thomas Grimmer is the alleged accomplice of two others in the shotgun murder of one Walter Schmidt committed during or immediately following a robbery-burglary attempt. One of the co-defendants pleaded guilty but had indicated his desire to appeal to this Court at the time defendant herein was undergoing trial. The other co-defendant was the principal witness for the state.

The defendant assigns eight principal grounds of error upon which he relies for reversal of the judgment below. Those grounds are: (1) failing to quash the indictment on the ground that it failed to adequately inform him of the charge against him; (2) instructing the jury that the indictment charged accessory before the fact to felony murder when the evidence of the state established the crime of principal in the second degree; (3) failure to arraign him; (4) permitting a co-defendant to invoke the 5th amendment; (5) permitting the state to impeach him on a collateral issue; (6) failure to try him at the same term at which he was indicted; (7) failure to instruct the jury as to three principal defenses of defendant: alibi, abandonment of the felony plan and that the death was caused by other than a participant in the crime; and (8) failing to conduct an evidentiary hearing on defendant's motion for a change of venue and in ruling upon that

motion and other pre-trial motions out of the presence of the defendant.

The indictment under which the defendant was tried and convicted, after charging his two fellow co-defendants with murder, continued: "... And the Grand Jurors aforesaid, upon their oaths aforesaid, do further present that Clayton Thomas Grimmer, before the said felony and murder was committed ... did feloniously, willfully, maliciously, deliberately, unlawfully and knowingly insite, move, procure, aid, abet, counsel, hire and command the said ... to do and commit the said felony and murder ..."

In *State ex rel. Brown v. Thompson,* 149 W. Va. 649, 142 S.E.2d 711 (1965) this Court, in Syllabus Point 11, said "An indictment which charges a principal in the first degree with the commission of the crime ... and which also charges that certain other persons before the commission of the principal offense did feloniously counsel with, aid and abet the principal in the first degree to do and commit the principal offense satisfies the constitutional requirement that in all trials the accused shall be fully and plainly informed of the character and cause of the accusation and is a good and sufficient indictment of the persons charged with being accessories before the fact to the crime ..." We think this statement is conclusive of the validity of the Grimmer indictment and that the trial court correctly refused to quash the indictment on the ground that it did not adequately inform him of the charge against him.

The trial court, after both sides had rested, charged the jury that the crime charged in the indictment was that of being an accessory before the fact to felony murder. In accordance with *State ex rel. Brown v. Thompson, supra,* we hold the Grimmer indictment did sufficiently charge the crime of accessory before the fact. The defendant contends, with force, that the state's evidence established the crime of principal in the second degree, or that of an aider and abettor. True, the evidence of the state did tend to establish that the defendant was (at

least, constructively) present, as a lookout and driver of the automobile. We must, however, just as the jury did, look at the evidence as a whole and determine whether or not there was evidence sufficient for the jury to conclude as they did. "The jury is the trier of the facts and in performing that duty it is the sole judge as to the weight of the evidence and the credibility of the witnesses." Point 2, Syllabus, *State v. Bailey,* 151 W. Va. 796, 155 S.E.2d 850 (1967); *State v. Fischer,* ___ W. Va. ___, 211 S.E.2d 666 (1974).

In order for the jury to conclude that the defendant was guilty of being an accessory before the fact to felony murder, the jury must have found the defendant to have been absent during the commission of the crime. This is the distinction between being an accessory before the fact and a principal in the second degree or an aider and abettor. An accessory before the fact is a person who, being absent at the time and place of the crime, procures, counsels, commands, incites, assists, or abets another to commit the crime, and absence at the time and place of the crime is an essential element of the offense of accessory before the fact. *State ex rel. Brown v. Thompson, supra; State v. Loveless,* 140 W. Va. 875, 87 S.E.2d 273 (1955). The defendant in the instant case, before the jury was instructed, voluntarily took the stand, admitted to having gone to Ohio to visit one of the co-defendants previous to the time of the commission of the subject crime; to meeting the other co-defendant at that visit; to having discussed burglaries "in that area"; to the visit of the two co-defendants to defendant's home in Wheeling; that these co-defendants later returned to Ohio; that they returned for another visit "a couple or three days before the 16th", the date of the alleged crime; that he did not agree to participate in the crime at any time; and that he did not ever visit the Schmidt home with the co-defendants. This defendant further testified that he was at home at the time the subject crime was committed. It is readily discernible that with this testimony, together with that offered by the state, the jury could believe that the defendant

had in fact participated in the planning of the crime, yet had been absent during its commission. Viewing the entire record, we conclude that there was sufficient evidence from which the jury could have concluded, as they did, that the defendant was guilty, beyond a reasonable doubt, of the crime of accessory before the fact to felony murder. "It is not necessary in appraising its sufficiency that the trial court or reviewing court be convinced beyond a reasonable doubt of the guilt of the defendant; the question is whether there is substantial evidence upon which the jury might justifiably find the defendant guilty beyond a reasonable doubt." *State v. West,* 153 W. Va. 325, 168 S.E.2d 716 (1969); *State v. Fischer,* ___ W. Va. ___, 211 S.E.2d 666 (1974). We find that there was such evidence and that the court did not err instructing the jury that the crime involved was accessory before the fact to felony murder nor in failing to direct a verdict for defendant.

Defendant assigns as error the fact that he was never formally arraigned. The record fails to show that arraignment did in fact take place. It does show that defendant, on numerous occasions, indicated he was not ready to plead until certain matters of discovery were completed. *W.Va. Code,* 62-3-2 provides that a formal arraignment is not required. The record further shows that during all of the proceedings, pre-trial motions, pleadings, etc. the defendant was represented by learned and effective counsel. It clearly appears that nothing was left "undone" that should have been "done" with the exception of the arraignment for the taking and recording of the plea. The essential requirements of a proper and sufficient arraignment dictate that the defendant be fully advised as to the nature of the charge, of his right to a jury trial and of the consequences of any plea tendered. *See, State ex rel. Burkhamer v. Adams,* 143 W. Va. 557, 103 S.E.2d 777 (1958).

The record clearly discloses that the defendant was fully advised and was aware of the nature of the charge against him; that a copy of the indictment was given to defendant and his counsel; that his counsel on his behalf

filed numerous motions and pleadings seeking further and more detailed information concerning the charge; that a bill of particulars was afforded the defendant; that not only was he aware of his right to a jury trial, he had a jury trial; and that the jury trial resolved any question concerning the consequences of any plea. There could be no doubt the charge against this defendant was so presented that his constitutional rights were fully protected.

This Court, in *State v. Moore*, 57 W. Va. 146, 49 S.E. 1015 (1905) said that the defendant must "be present in court, and plead to the indictment against him *in person*, and the record must affirmatively show this." This point was again made in *State v. McGee*, ___ W. Va. ___, 230 S.E.2d 832 (1976).

In *State v. Moore, supra*, the record showed that the plea was entered by the attorneys for the defendant. The Court said that the law was clear that the record "must show the presence of the prisoner, and that he plead in person." The case was reversed and defendant was granted a new trial.

Defendants, under constitutional mandate and in accordance with our established concept of justice, are entitled to a fair trial. They are not necessarily entitled to an error-free trial. Too often technical errors which do not in any manner deprive a defendant of fair and impartial treatment are relied upon for reversal. So long as a defendant has not been denied any constitutional or statutory right, but, to the contrary, has been afforded all constitutional and statutory protections to which he is entitled, mere technical errors that do not deprive or unduly prejudice the defendant in the conduct of his defense will be considered harmless. In *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967) the Court held that some constitutional errors can be harmless. For a constitutional error to be harmless, the court said "the court must be able to declare a belief that it was harmless beyond a reasonable doubt."

In *State v. Riley*, 151 W. Va. 364, 151 S.E. 2d 308 (1966) this Court said in Syllabus 25, "An appellate court will not reverse a lower court for any error in the trial unless the error is harmful to the defendant." We fail to see how the defendant in the instant case was harmed by the failure of the record to show an arraignment and formal recording of a plea. See *State v. Thomas*, ___ W. Va. ___, 203 S.E.2d 445 (1974); *State ex rel. Grob. v. Blair*, ___ W. Va. ___, 214 S.E.2d 330 (1975). If, in fact, he did not enter a plea the circumstances reveal that he effectively waived that right. The failure to arraign was not raised in the trial court but was raised here for the first time. When there is an opportunity to speak, silence may operate as a waiver of objections to error and irregularities at the trial which, if seasonably made and presented, might have been regarded as prejudicial.

We do not say that henceforth arraignments are no longer required. We merely conclude, under the circumstances presented in this case, that the defendant was not deprived of any substantial right affecting his trial on the charge presented and that the failure of the record to show an arraignment in this case was harmless error. Accordingly we overrule *State v. Moore*, 57 W. Va. 146, 49 S.E. 1015 (1905) and subsequent cases insofar and only insofar as such decisions require the record to show an arraignment in every case.

A further assignment of error is the ruling of the trial court in permitting a co-defendant who had pleaded guilty to the principal charge, to invoke the Fifth Amendment. Defendant contends that by pleading guilty to the principal crime, the co-defendant has waived his constitutional rights and therefore should be required to testify. While the co-defendant did plead guilty and did waive his constitutional rights, he indicated to the trial court that he intended to appeal the guilty verdict. Based upon the fact that the co-defendant had expressed an intention to appeal, the trial court refused to require him to testify. On advice of counsel, the co-defendant invoked the Fifth Amendment when called to testify for the defendant in the instant case. It

is the contention of defendant that he has the constitutional right to subpoena witnesses in his behalf who may have evidence reflecting upon his guilt or innocence and compel them to testify. This is true to a degree. A defendant cannot subpoena a co-defendant and compel him to testify when the co-defendant invokes his own constitutional right not to incriminate himself. Defendant contends here that the appeal of the co-defendant in no way challenges his participation in the crime or how it occurred but goes only to the question of various pretrial motions and rulings of the trial court pertaining to the felony-murder rule.

In *Mills v. United States,* 281 F. 2d 736 (4th Cir. 1960) the Court held that a witness who had been convicted and who was called to testify against a co-defendant still retained her Fifth Amendment rights because the period in which she could appeal had not expired. In the instant case, the co-defendant had appealed and at the time he was called to testify for the defendant it was possible that he would be granted a new trial. His appeal period had not expired and upon advice of counsel he invoked the Fifth Amendment, a right to which he was entitled. Any statement concerning the instant crime could be used against him on a new trial if one were afforded him.

The state, over the objection of the defendant, was permitted to elicit testimony which resulted in the impeachment of the defendant's testimony on direct examination concerning the conditions of his Ohio parole. The defendant, after voluntarily taking the stand, testified that he was not proscribed by a condition of the Ohio parole from associating with known felons. The state called as a witness the defendant's parole officer who testified that condition No. 7(b) of his parole was to "Avoid association with parolees, probationers or individuals who have felony convictions." The defendant, on direct examination had testified that he had been convicted of three prior felonies and, when charged of the instant crime, was on parole from Ohio. Clearly, according to the defendant's testimony on direct examination,

he had associated with Sims, a known felon with whom he had experienced penitentiary incarceration. The defendant complains that the court erred in permitting impeachment of the defendant on a collateral issue.

We are of the opinion that the assignment of error is without merit. As noted, the defendant took the stand and, after admitting that he had been convicted of felonies on three prior occasions, undertook to convey to the jury that he had obeyed the conditions of his Ohio parole until he was charged with this crime. All of the foregoing took place on direct examination—testimony elicited by his counsel. He cannot now be heard to complain when the state introduces evidence to answer a matter raised by him. He testified to his adherence to the rules of parole. Being comparable to his introduction of evidence of good character, it became incumbent on the state to answer his affirmative assertions.

In *State v. Ramey*, ___ W. Va. ___, 212 S.E.2d 737 (1975), relied upon by the defendant, the state introduced the matter of intoxication at the time of the crime. This was not first raised by the defendant and we have no quarrel with that decision on that issue. In the instant case, as noted, the defendant initially stated that he had observed all of the conditions of his parole. In effect, he was testifying as to his good character. As stated in *State v. Ramey, supra,* "Where the accused takes the stand or produces witnesses who testify as to his previous good character in defense of the charge against him, he or they may be cross-examined on otherwise unconnected and irrelevant matters to demonstrate his bad character." In the above circumstance, the court did not err in permitting the introduction of this evidence.

The defendant assigns as error the fact that he was not tried at the same term in which he was indicted. He asserts that he was denied a speedy trial under *W.Va. Code*, 62-3-1. That statute provides that one should be tried at the same term in which the indictment was returned, "unless good cause be shown for a continu-

ance". The defendant was indicted in March, 1976 and was tried in August, 1976.

While we do not deem it necessary to list, chronologically, all of the motions and requests made by the defendant, an examination of the record clearly reveals much activity on behalf of the defendant and that "good cause" was shown for a continuance of the trial until the next term. In *State v. Alexander*, ____ W. Va. ____, 245 S.E.2d 633 (1978), the Court said ". . . the right to a speedy trial is not violated by unavoidable delays nor by delays caused by defendants." In the instant case the trial court noted the numerous motions and requests for hearing by the defendant in expressly holding that good cause was shown for a continuance.

The following colloquy between defense counsel and the court meaningfully demonstrates the court's concern for the defendant's rights and the reason that a continuance was necessary:

THE COURT: Is there any other motion now?

MR. WATSON: Not at this time, your Honor. There is one thing that does concern me. Much of the material which we have sought, the Prosecutor's response has been that it's not yet available. I think that's fine. I am sure it's not within his control, but I can see that we can have a difficult time getting ready for trial if it isn't made available to us soon enough.

THE COURT: The Court is not going to push you into trial of this case before you are ready.

MR. WATSON: Once the material is available, it may be that I have other motions to file when I see that material.

MR. McMULLEN: Your Honor, this situation is the same as in the Sims case. This mass of physical evidence has been sent to the F.B.I. laboratories. We have only one result so far. It's been there over a month. As soon as we get it, we will make it available.

We are of the firm opinion that the court did not abuse its discretion in continuing the trial until the next term and that the defendant was not thereby unlawfully deprived of a speedy trial.

The defendant testified that at the time of the subject crime he was at home in bed with his girlfriend and therefore could not have participated in said crime. He offered an alibi instruction which was refused by the court. This, he asserts, constitutes reversible error. We disagree.

In its charge the court told the jury that the defendant was indicted and was on trial "for the offense of being an accessory before the fact in the alleged homicide of Walter Schmidt and not for any other offense"; it defined the offense of accessory before the fact to murder and, as a part thereof, instructed the jury that to be such accessory, one could not be present at the actual commission of the offense, murder in this instance.

An alibi instruction would merely tell the jury that he was not present during the commission of the robbery murder. This, the defendant readily admitted; in fact, on direct examination, he expressly denied that he was at the scene of the crime. Such absence does not in any manner constitute a defense to the charge against him— accessory before the fact to murder. A necessary element of the offense of "accessory before the fact" is absence at the time of the commission of the principal crime. See *State ex rel. Brown v. Thompson, supra.* In these circumstances the trial court correctly refused the alibi instruction.

The defendant assigns as error the refusal of the court to give his offered instruction to the effect that abandonment of the felony is a defense in a felony-murder case. The legislature, expressing the gravity it attaches to a murder committed during the commission of, or attempt to commit, arson, rape, robbery or burglary, created the crime of felony-murder and designated it murder of the first degree. *W.Va. Code*, 61-2-1. We have found no case in our jurisdiction, nor has any been cited, which holds that abandonment of one of the enumerated felonies constitutes a defense to the crime of felony murder.

We are not persuaded by the decision in *People v. Marwig*, 227 N.Y. 382, 125 N.E. 535 (1919), cited by the defendant. It is factually distinguishable from the instant case and insofar as it applies to the defense of abandonment, we strongly disagree. There, the murder took place in the street after an attempt to rob a jewelry store. Here, the murder occurred on the premises of the victim and we have only the subjective expression by one of the perpetrators of the murder that they had decided to abandon their attempted burglary or robbery. We find such defense incredulous. Not only is there a paucity of credibile evidence of abandonment in this case but should that defense be permitted, a perpetrator of a burglary, upon finding that his criminal caper was not going as planned, could kill upon leaving the scene and escape prosecution for the offense of felony murder. We do not subscribe to the defense of abandonment in the circumstances of this case and find this assignment of error to be without merit.

The defendant complains of the court's refusal of his Instruction No. 35. The theory of defense offered thereby is that the killing of Walter Schmidt was accidental and therefore could not constitute the offense of felony murder. This assignment was fully answered in *State v. Sims*, ____ W. Va. ____, ____ S.E.2d ____ (1978), wherein the Court said in Syllabus No. 7: "The crime of felony-murder in this State does not require proof of the elements of malice, premeditation or specific intent to kill. It is deemed sufficient if the homocide occurs accidental-

ly during the commission of, or the attempt to commit, one of the enumerated felonies."

We find no merit to the defendant's complaint that no evidentiary hearing was afforded on the motion for a change of venue. There was, in fact, a hearing afforded, if desired by the defendant. The record reveals the following:

THE COURT: What about your other motion?

MR. WATSON: Well, the one motion which was filed on Monday was a motion for a change of venue, and the other ...

THE COURT: Do you want to speak to either of those at this time?

MR. WATSON: I think it's not necessary. I think they speak for themselves.

THE COURT: You have filed affidavits with your motions, have you not?

MR. WATSON: Yes, I have.

Finally, the defendant contends that the court erred in deciding crucial defense motions out of the defendant's presence. The record reveals that a hearing was held on August 18, 1976 on the defendant's motion to suppress evidence and that defendant and his counsel were present throughout such hearing. The other two motions were made in the defendant's presence but, at the instance of his counsel, no hearings were held. The court later filed a memorandum opinion reflecting its overruling of the defendant's motions and counsel were instructed to prepare the necessary orders. Orders were prepared, counsel for the State and for the defendant signed the orders and the defendant's attorney noted his objection to the orders. We fail to see that the defendant was not present at any critical stage of the criminal proceedings.

The judgment of the Circuit Court of Brooke County is affirmed.

*Affirmed.*