# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

June 22, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 14-0718** (Mercer County 13-F-353)

**John Daniel Spaulding,**
**Defendant Below, Petitioner**


## MEMORANDUM DECISION

Petitioner John Daniel Spaulding, by counsel Harold B. Wolfe III, appeals the order of the Circuit Court of Mercer County, entered on June 23, 2014, denying his motion for a new trial and adjudging him guilty of three counts of first-degree sexual assault and fifty counts of possession of material depicting minors engaged in sexually explicit conduct.  Petitioner was sentenced to three consecutive terms of imprisonment for each of the first-degree sexual assault convictions, and fifty two-year terms for the convictions of possession. The possession convictions were ordered to be served concurrently with each other and concurrently with the sexual assault convictions. Respondent State of West Virginia appears by counsel Laura Young.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

I.

The Bluefield Police Department initiated a criminal investigation in 2012, after a local pawn shop received a computer from Kimberly C. containing a substantial amount of material depicting minors engaged in sexually explicit conduct. The West Virginia State Police assisted in the investigation, which ultimately expanded to include petitioner, to whom Ms. C. apparently transferred a great deal of the material. A search warrant executed pursuant to the investigation resulted in the seizure of numerous files depicting child pornography from petitioner's computer. Several of these images depicted each of the victims, C.A.[1] (age 3 during the relevant period)

---

[1]  We use initials to identify the minor victims in this case, pursuant to our practice of protecting the identity of juveniles in sensitive cases. *See, e.g., State ex rel. WV Dept. of Human Services v. Cheryl M.*, 177 W.Va. 688, 689 n. 1, 356 S.E.2d 181, 182 n. 1 (1987); *see also* W.Va. R.App. P. 40(e)(1).
(continued . . .)

1

and B.W. (age 14 during the relevant period), and the computer also contained material downloaded from the Internet. Petitioner submitted to a police interview after being given a *Miranda*[2] warning. He acknowledged in the course of that interview that he was aware that "kiddie porn" was on his computer. He stated, however, that he did not put it there. He also admitted to police, according to the testimony of West Virginia State Police Sgt. Kevin Summers, that he had given his cellular telephone to an unnamed individual so that the police would not look at it.[3] Petitioner requested a lawyer and the interview was terminated. The following month, he again appeared for an interview (with a lawyer), and again admitted that there was child pornography on his computer, including pictures of B.W. He also acknowledged text messages between himself and Ms. C. Petitioner and Ms. C. were indicted on numerous charges in 2013. Petitioner was subsequently charged in a separate, superseding indictment with six counts of first-degree sexual assault (involving C.A.) and fifty counts of possession of material depicting minors (specifically C.A. and B.W.) engaged in sexually explicit conduct.

Numerous motions were taken up prior to trial. Petitioner filed a motion to suppress his statement, to suppress evidence seized in the execution of the search warrant, and to preclude the introduction of the text messages exchanged between him and Ms. C. The State provided notice of intent to use Rule 404(b) evidence, indicating it would present evidence of "thousands" of child pornography files found on petitioner's computer, all generated after the death of petitioner's deceased brother, who formerly owned the laptop, for the purpose of proving lustful disposition and absence of mistake. A *McGinnis*[4] hearing was conducted, at which Sgt. Summers testified that he discovered a "significant" number of images of commercial child pornography, as well as images of B.W. and C.A. The court ruled that it would allow this evidence, but instructed that the officer could not testify about the existence of a specific number— "thousands"—of other images, instead allowing the prosecution to select fourteen representative images. Ultimately, when the evidence was presented at trial, a limiting instruction was given.

The case proceeded to trial. In his opening statement, the assistant prosecutor informed the jury that they would be hearing evidence in a case—which he deemed "bizarre"—involving the sexual assault of a three-year-old girl. He further explained that Ms. C. invented odd ploys to interest petitioner, beginning with the creation of an online persona and including taking sexually-suggestive photographs of her own fourteen-year-old daughter, B.W., and exchanging numerous text messages that ultimately showed petitioner's sexual interest in children. The assistant prosecutor told the jury that, ultimately, Ms. C. did not submit her own daughter to contact with petitioner but, instead, concocted a birthday party to be attended by the three-year-old C.A., wherein petitioner would engage in sexual contact with her. The assistant prosecutor

---

[2] *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966).

[3] The telephone was never recovered by the police.

[4] *See State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994).

cautioned the jury that petitioner would assert that Ms. C. fabricated this story. In the defense's opening statement, petitioner's counsel asserted that petitioner was "set up" and that Ms. C. placed the images on his computer. The circuit court then modified its earlier ruling and allowed the State's witnesses to discuss the specific number of images found on petitioner's computer.

West Virginia State Police Sgt. David Eldridge testified and authenticated the photographs described in the charging instrument. Twenty-six of those pictures were taken of C.A., many capturing sexual acts involving that child. Sgt. Eldridge testified that he believed Ms. C. took most of the pictures (using a cellular telephone) but it was possible another individual was involved. After having entered her own pleas of guilty and having her parental rights to B.W. terminated, Ms. C. testified in detail about her disturbing history with petitioner. She admitted to creating an online persona as a link to petitioner, and eventually entering a physical relationship with petitioner, subsequent to which petitioner informed Ms. C. that he was sexually interested in B.W. Ms. C. took pictures of B.W. for petitioner. Ms. C. further testified that petitioner sent commercial pornographic images to her and informed her that he wanted similar pictures of B.W. Ms. C. admitted to taking pictures of C.A., and arranging sexual contact for petitioner with C.A. at a local hotel, after telling C.A.'s mother that she wanted to take her to a sleepover. Ms. C. described sending petitioner a text message suggesting that C.A. be "knocked out," and that he ejaculate inside the child. Ms. C. obtained trazodone[5] for the child, and suggested that petitioner obtain K-Y® lubricant[6] before the meeting. Ms. C. further testified about the various sexual acts giving rise to the sexual assault charges. On cross-examination she testified that she initially denied having anything to do with the images, and she further denied ever having possession of petitioner's cellular telephone, but stated that she saw petitioner destroy it.[7]

At the conclusion of the jury trial, petitioner was convicted as described above. Petitioner filed a motion for a new trial, and several supplements to that motion, on numerous grounds. The court denied the motion for a new trial. Petitioner was sentenced to serve consecutive terms of twenty-five to one-hundred years for each of the sexual assault charges, and terms of two years on the each of the possession charges, to be served concurrently with all other terms. This appeal followed.

II.

In this case we are called upon to review the circuit court's order which denied petitioner's motion for a new trial. This Court has previously held that

---

[5] Trazodone is an antidepressant medication, sometimes sold under the brand names Oleptro or Desyrel. Drowsiness is a common side effect of the drug.

[6] K-Y Jelly is a water-based, water-soluble product, commonly used as a lubricant for sexual intercourse.

[7] Petitioner did not testify in his defense.

"[a]lthough the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence."

*State v. Vance*, 207 W.Va. 640, 643, 535 S.E.2d 484, 487 (2000) (*quoting* Syl. pt. 4, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976)). We elaborated upon the standard of review in Syllabus Point 3 of *Vance*:

In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

207 W.Va. 640, 535 S.E.2d 484.

Guided by these standards, we will address petitioner's eleven assignments of error. In summary, those assignments of error are that the circuit court erred in: 1) admitting into evidence fourteen photographic images unrelated to the charges set forth in the indictment; 2) failing to order the preservation of the original images of fourteen "sanitized" photographs; 3) permitting evidence about unauthenticated text messages; 4) allowing testimony and images of "uncharged alleged child pornography;" 5) refusing to allow "presentment to the jury of the second portion of petitioner's recorded statement;" 6) denying petitioner's motion for a new trial based on juror misconduct; 7) precluding the cross-examination of an investigating officer about a "notarized statement" of B.W.; 8) precluding petitioner from introducing evidence that C.A. identified an individual other than petitioner as her attacker; 9) denying petitioner's motion for a new trial based on the State's failure to offer evidence corroborating Ms. C.'s testimony that C.A. was "ever" in the custody of Ms. C.; 10) allowing the assistant prosecuting attorney to comment on petitioner's theory of defense during opening statement; and 11) ruling that petitioner was not prejudiced by the late disclosure of certain evidence.[8]

III.

At the outset, we note that several of the issues encompassed in petitioner's assignments of error were not brought to the attention of the trial court in a timely fashion.[9]

_____

[8] Many of petitioner's assignments of error contain as many as three subparts. We have summarized and paraphrased in the interest of clarity.

[9] Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that petitioner's brief contain an argument exhibiting clearly the points of fact and law presented. That Rule also requires that such argument "contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of (continued . . .)

4

This Court has consistently held that "silence may operate as a waiver of objections to error and irregularities at the trial which, if seasonably made and presented, might have been regarded as prejudicial." *State v. Grimmer*, 162 W.Va. 588, 595, 251 S.E.2d 780, 785 (1979), *overruled on other grounds by State v. Petry*, 166 W.Va. 153, 273 S.E.2d 346 (1980). The raise or waive rule is designed "to prevent a party from obtaining an unfair advantage by failing to give the trial court an opportunity to rule on the objection and thereby correct potential error." *Wimer v. Hinkle*, 180 W.Va. 660, 663, 379 S.E.2d 383, 386 (1989). In *State v. LaRock*, 196 W.Va. 294, 316, 470 S.E.2d 613, 635 (1996), this Court explained as follows:

> Our cases consistently have demonstrated that, in general, the law ministers to the vigilant, not to those who sleep on their rights. . . . When a litigant deems himself or herself aggrieved by what he or she considers to be an important occurrence in the course of a trial or an erroneous ruling by a trial court, he or she ordinarily must object then and there or forfeit any right to complain at a later time. The pedigree for this rule is of ancient vintage, and it is premised on the notion that calling an error to the trial court's attention affords an opportunity to correct the problem before irreparable harm occurs. There is also an equally salutary justification for the raise or waive rule: It prevents a party from making a tactical decision to refrain from objecting and, subsequently, should the case turn sour, assigning error (or even worse, planting an error and nurturing the seed as a guarantee against a bad result). In the end, the contemporaneous objection requirement serves an important purpose in promoting the balanced and orderly functioning of our adversarial system of justice.

The *LaRock* Court further explained that: "One of the most familiar procedural rubrics in the administration of justice is the rule that the failure of a litigant to assert a right in the trial court likely will result in the imposition of a procedural bar to an appeal of that issue." *Id*. (internal quotations and citations omitted). *See also Powderidge Unit Owners Ass'n v. Highland Props.*, Ltd., 196 W.Va. 692, 703, 474 S.E.2d 872, 883 (1996) ("The law ministers to the vigilant, not those who slumber on their rights." (internal quotations and citations omitted)); *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 216, 470 S.E.2d 162, 170 (1996) ("The rule in West Virginia is that parties must speak clearly in the circuit court, on pain that, if they forget their lines, they will likely be bound forever to hold their peace." (citation omitted)); *Hanlon v. Logan County Bd. of Educ.*, 201 W.Va. 305, 316, 496 S.E.2d 447, 458 (1997) ("A party simply cannot acquiesce to, or be the

error were presented to the lower tribunal." In several instances we found petitioner's brief lacking in this regard.

5

source of, an error during proceedings before a tribunal and then complain of that error at a later date." (citations omitted)); *State v. Asbury*, 187 W.Va. 87, 91, 415 S.E.2d 891, 895 (1992) ("Generally the failure to object constitutes a waiver of the right to raise the matter on appeal.").

*State v. Proctor*, 227 W.Va. 352, 359-60, 709 S.E.2d 549, 556-57 (2011).

As noted by respondent, at trial petitioner did not object to the circuit court's admission of the photographs used as trial exhibits[10] or the court's method for ensuring the correct photographs were introduced (first and second assignments of error); to comments made by the assistant prosecutor during his opening statement (tenth assignment of error); or to the timing of the disclosure of evidence of forensic data and text messages[11] (eleventh assignment of error). For the reasons explained above, we find that each of these issues was waived and we consider them no further.

IV.

We begin our more substantive analysis with petitioner's third assignment of error, in which he argues that the circuit court failed to require authentication of text messages (many of which included pornographic images of children) purportedly sent from petitioner's cellular telephone to Ms. C.'s cellular telephone. Rule 901(a) of the West Virginia Rules of Evidence provides that, to authenticate an item of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." We have held:

Preliminary questions of authentication and identification pursuant to W.Va. R. Evid. 901 are treated as matters of conditional relevance, and, thus, are

---

[10] Petitioner objected to the reference to the quantity of images discovered on petitioner's computer, but not to the admission of the photographs themselves. As more fully explained in the body of this decision, to the extent that petitioner argues that testimony regarding the quantity of images was irrelevant or prejudicial, it is clear that the number of pornographic images was indeed relevant and more probative than prejudicial to show absence of mistake, inasmuch as petitioner's counsel indicated in opening argument that petitioner "was just set up to look guilty."

[11] Though he refers to text messages in his assignment of error, petitioner's argument supporting that assignment of error refers only to the forensic analysis of Ms. C.'s computer. Petitioner acknowledges that he received the evidence "approximately sixty . . . hours before trial." Though it is undisputed that petitioner was aware of the existence of this evidence prior to the start of trial, there is no indication that petitioner addressed the timing of the disclosure with the circuit court until the filing of his motion for a new trial, after the jury had rendered its verdict.

6

governed by the procedure set forth in W.Va. R. Evid. 104(b).[12] In an analysis under W.Va. R. Evid. 901 a trial judge must find that the party offering the evidence has made a *prima facie* showing that there is sufficient evidence 'to support a finding that the matter in question is what its proponent claims.' In other words, the trial judge is required only to find that a reasonable juror could find in favor of authenticity or identification before the evidence is admitted. The trier of fact determines whether the evidence is credible. Furthermore, a trial judge's ruling on authenticity will not be disturbed on appeal unless there has been an abuse of discretion.

Syl. Pt. 1, in part, *State v. Jenkins*, 195 W. Va. 620, 621, 466 S.E.2d 471, 472 (1995). Petitioner acknowledged in his statement given to the police that he and Ms. C. frequently exchanged text messages. Moreover, police who reviewed Ms. C.'s cell phone found a number believed to be that of petitioner, and confirmed petitioner's ownership through bills found at his residence, according to the testimony of Sgt. Eldridge. Petitioner then confirmed his ownership of that phone when giving his statement to police. Thousands of text messages were exchanged between Ms. C.'s telephone and the telephone that police determined belonged to petitioner, and Ms. C. confirmed the source of the relevant text messages in her testimony. The text messages presented to the jury in this case were sufficiently authenticated.

We next turn to petitioner's fourth assignment of error, in which he argues that the circuit court erred in allowing the West Virginia State Police forensic analyst to testify about petitioner's "other bad acts"—that is, the thousands of pornographic images of children found on petitioner's computer—after having conducted a *McGinnis* hearing and determining that evidence of only fourteen of the images not related to the charges would be admissible.

The standard of review for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403. *See State v. Dillon*, 191 W.Va. 648, 661, 447 S.E.2d 583, 596 (1994); *TXO Production Corp. v. Alliance Resources Corp.*, 187 W.Va. 457, 419 S.E.2d 870 (1992), aff'd, 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993); *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986).

*LaRock*, 196 W. Va. at 310-11, 470 S.E.2d at 629-30. There is no question that a *McGinnis* hearing was conducted, but petitioner disputes that the circuit court engaged in an appropriate balancing test or made appropriate findings regarding testimony about the numerous images

---

[12] Rule 104(b) provides: "When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later."

found on petitioner's computer.[13] We disagree. The circuit court's consideration of the matter was apparent when it explained its reconsideration of its earlier ruling:

> This is the reason that the [c]ourt feels like it should be allowed in all fairness and candor is that, as I understand from the defense's opening statement, is part of the defense in this case is that Ms. [C.] placed on these images on [petitioner's] computer. I think the State is using this to show that it's highly unlikely since there's more images on [petitioner's] computer than was on Ms. [C.]'s own computer. So I think that's fair game and I think it's relevant and material to this issues in this case.

We agree with the circuit court that the evidence was admissible for a legitimate purpose and was more probative than prejudicial. We therefore find no error in this regard.

Petitioner argues in his fifth assignment of error that the circuit court erred in declining to require the "second portion" of his statement to the police to be played for the jury, in accordance with Rule 106 of the West Virginia Rules of Evidence, after the State introduced petitioner's initial statement through the testimony of Sgt. Summers.[14] We agree with the circuit

---

[13] We have explained:

> Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

Syl. Pt. 2, *State v. McGinnis*, 193 W. Va. 147, 151, 455 S.E.2d 516, 520 (1994).

[14] While Rule 106 was amended in 2014, the version applicable at the time of petitioner's trial provided that "when a writing or recorded statement or part thereof is introduced by a party, (continued . . .)

court, however, that this "second portion" was actually a separate statement taken on a later date, and the State properly objected on the basis of hearsay. "It is well settled that decisions regarding the admission and exclusion of evidence are peculiarly within the province of the trial court and are not to be reversed on appeal absent an abuse of discretion. Thus, evidentiary decisions of a trial court are entitled to substantial deference." *McDougal v. McCammon*, 193 W.Va. 229, 235, 455 S.E.2d 788, 794 (1995). The court did not abuse its discretion in excluding the statement and we find no error on this ground.

We turn now to petitioner's sixth assignment of error, concerning his allegations of jury impropriety. This argument is based on petitioner's having discovered, subsequent to trial, that Sgt. Eldridge's mother-in-law was a deputy clerk for the circuit court, and that a juror was her co-worker and an employee of the civil division of the circuit clerk's office.[15] West Virginia trial judges are accorded ample discretion in determining how best to conduct voir dire. *State v. Derr*, 192 W.Va. 165, 172-75, 451 S.E.2d 731, 738-41 (1994). As a general rule, we will find an abuse of discretion only when there is insufficient questioning to allow defense counsel to exercise a reasonably knowledgeable challenge to unqualified jurors. *See* Syl. Pt. 2, *State v. Mayle*, 178 W.Va. 26, 357 S.E.2d 219 (1987).  Inasmuch as there is no evidence that Sgt. Eldridge's mother-in-law had any part in the jury deliberations or the substantive decisions regarding jury selection, we find petitioner's argument with regard to her to be wholly without merit. Petitioner fails to allege that the circuit court in any way directed voir dire such that pertinent information regarding the juror's background would not have been discovered in the course of diligent examination, and fails to offer evidence that he requested and was denied further voir dire. In *State v. Beckett*, 172 W.Va. 817, 823, 310 S.E.2d 883, 889 (1983), we suggested that where a defendant does not seek additional voir dire to demonstrate possible bias, prejudice, or disqualification, there can be no error for the failure to strike prospective jurors for cause. *See also State v. Ward*, 188 W.Va. 380, 393, 424 S.E.2d 725, 738 (1991). Furthermore, petitioner offers no evidence that the juror in question was in any way dishonest about her employment or otherwise obstructed petitioner's ability to discover facts relevant to her qualifications to serve on the jury. We find no error on this ground.

In petitioner's seventh assignment of error, he argues that the circuit court erred in disallowing his cross-examination of Sgt. Summers concerning a notarized, written statement by B.W. implicating "Robbie Dillon." The record reveals that the statement to which petitioner refers was not taken by Sgt. Summers. Instead, the document was written by B.W. herself and taken by another individual to the Office of the Prosecuting Attorney, which then forwarded the

---

an adverse party may request the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."

[15] Petitioner also cursorily states in this argument as follows: "On a related issue, during the trial[,] juror no. 1 was observed by members in the gallery utilizing an electronic device for what appeared to be texting and reclining back with his eyes closed and appeared to be sleeping." It is undisputed that counsel was aware of this "related issue" prior to jury deliberation, but that he failed to bring the same to the attention of the circuit court at that time. Any claim with respect to Juror No. 1 was thus waived.

document to Sgt. Summers. The circuit court sustained the hearsay exception after petitioner's counsel asked Sgt. Summers, "Did [the statement] point to information that would implicate Robbie Dillon of child pornography?" As this statement was an out-of-court statement offered to prove the truth of the matter asserted, we find that the circuit court properly determined that it was hearsay for which there was no recognized hearsay exception. See W.Va. R. Evid. 801(c) ("'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted.") We find no error.

Next we address petitioner's eighth assignment of error, in which he argues that the circuit court prevented him from introducing evidence of "the identification of another perpetrator by C.A." Petitioner claims that C.A., in conversations with her mother, Brittany S., identified "Robbie Dillon" as present in the hotel room when she was allegedly assaulted by petitioner. Although petitioner did not offer the testimony of C.A.'s mother, C.A.'s father, Roger A. testified, as a witness for the State, that C.A. never stated that anyone else was present at the time of the assault. Furthermore, there is absolutely no evidence in the appendix record that petitioner attempted to call Brittany S.—or any other witness, for that matter—to testify about the alleged identification of Robbie Dillon. Rather, petitioner's argument appears to be based on the circuit court's ruling with regard to the testimony of Sgt. Summers, as described above, indicating that he chose not to call additional witnesses "based on the [c]ourt's ruling that any identification by C.A. was hearsay. . . ."[16] We find no logic in the argument that the circuit court's ruling on a hearsay objection with regard to a particular witness would summarily preclude the presentation of other, specifically identified witnesses. There is no indication in the appendix record on appeal that the circuit court's singular ruling during the testimony of Sgt. Summers was in fact a ruling encompassing any and all testimony about the identification of other individuals. We find no error in this regard.

Finally, we address petitioner's ninth assignment of error, in which he argues—in a single, brief paragraph with no citation to applicable legal authority—that the circuit court erred in denying his motion for a new trial on the basis that the State offered no evidence corroborating the testimony of Ms. C. "that C.A. was ever in the custody of [Ms. C.]." We consider petitioner's argument as one challenging the sufficiency of the evidence. We note:

> [A] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be

---

[16] Petitioner offers no citation to the record to pinpoint the ruling of the circuit court that is the basis for this argument. Again, we note that Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that a party's argument "contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal."

inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

Syl. Pt. 3, in part, *State v. Guthrie*, 194 W. Va. 657, 663, 461 S.E.2d 163, 169 (1995).

In the case before us, Ms. C. testified that she fabricated a birthday party so that she, together with petitioner, could take a three-year-old victim to a hotel for the purpose of inflicting unspeakable harm for Ms. C.'s and petitioner's own gratification. Text messages exchanged between Ms. C. and petitioner detailed the plans that the pair had for their helpless prey. Petitioner possessed pornographic images depicting the young girl, some showing the graphic sexual acts committed in the hotel as Ms. C. described. We find the evidence was more than sufficient to convict petitioner of the crimes charged.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 22, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

11